Complainant prays that defendant be enjoined from putting into effect his expulsion from membership.
Defendant, a branch of the American Newspaper Guild, is a trade union of employes in the editorial departments of newspapers and press associations, that is, reporters, photographers, columnists, c. The Newark Guild is divided into units, each of which consists of the members who are employes of the same newspaper. Its constitution under the title "Membership" contains these provisions:
"Section 25. * * * No member whose interests are deemed by the unit or by the executive committee of the Guild to lie with the employer, shall be allowed to remain a member, but in any case the applicant or member concerned may appeal the decision of the unit or executive committee of the Guild to the Guild in general meeting."
An earlier section provides that a member who resigns because he has become ineligible, shall be re-admitted to membership without an initiation fee, if he again becomes eligible.
"Section 27. If a member who becomes ineligible for membership under the application of sections 25 and 26 herein, neglects to withdraw or refuses, upon request, to do so, he shall be expelled from membership."
Under section 25 everyone would agree, I suppose, that a reporter who is a son of the owner or who holds a large block of stock of the company owning the newspaper, is ineligible. Likewise, a managing editor. In intermediate positions, the nature of the duties and the mental attitude of the individual would determine whether or not he is eligible for continued membership. Plainly, the guild seeks to restrict its membership to those employes who are willing to make common cause with their fellows in collective bargaining or controversies *Page 318 
with their employer. The guild entrusts the decision in the first place to the unit or to the executive committee. No formal trial is required. It is assumed that the members of these bodies, all newspaper men, will have considerable personal knowledge of the facts from which a conclusion may be drawn.
Complainant in September, 1935, was promoted to the city editorship of the Newark Ledger, an executive position of importance. On January 10th, 1936, seven members of the Ledger unit presented to the executive committee a petition stating their conviction that the interests of complainant and a certain other member lay with the publisher and asking the committee to take action accordingly. The secretary of the guild, the same day, notified complainant that the committee would meet to consider the petition January 14th, "The executive committee invites you to appear at that time and to bring with you any guild members whom you may wish to have speak on the subject." At the meeting, the matter was discussed for three hours and then a recess taken until the following evening, when the committee voted unanimously "that the executive committee finds that the interests of * * * and Jacob Mogelever lie with the publisher of the Newark Ledger as against the interests of the employes and that the committee order them to withdraw from the guild within fifteen days."
Complainant argues that section 25 of the constitution under which the executive committee acted, is unreasonable and void. The constitution is a contract between the members. "It is only as contracts that these constitutions are in the least obligatory." Austin v. Searing, 16 N.Y. 112. Speaking generally, a contract is binding on the parties so long as it is not contrary to public policy and without regard to its reasonableness. Kehlenbeck v. Logeman, 10 Daly (N.Y.) 447;Inderwick v. Snell, 2 Mac. G. 216; 42 Eng. Rep. (22Chancery) 83. But in view of the great power and importance of trade unions, courts tend to hold that provisions in their constitutions which are unreasonable are contrary to public policy. *Page 319 
Complainant's attack on section 25 runs somewhat as follows: The section makes the determination of the executive committee conclusive, except on appeal to the general meeting, and since it does not require formal charges or trial, a member may be adjudged ineligible for continued membership, without having had opportunity for a fair hearing. If this were the only tenable construction of the section, complainant's argument would be persuasive. But, as will be noted below, the union took the view that the decision of the executive committee was not conclusive, and that complainant was entitled to a formal trial before a trial board having jurisdiction of the question where his interests lay. This construction of the constitution should be followed and section 25 upheld.
Complainant also says that the constitution gave concurrent jurisdiction over his case to the Ledger unit; that the unit considered the matter before the executive committee acted and decided in complainant's favor. The evidence on which complainant relies shows that a large number of the unit presented to the executive committee a resolution expressing their confidence in complainant. This was the act of individuals and was not intended to be action of the unit under section 25.
Among the signers of the petition which brought the case to the attention of the executive committee were three members of the committee. But they did not vote on the question, or, so far as appears from the lengthy minutes, take any part in the discussion.
Complainant wrote the secretary that he refused to obey the order to resign. His letter was construed as an appeal to the guild in general meeting and accordingly the matter was brought before the guild March 1st. By secret ballot the guild voted to ratify the executive committee's action. Complainant in his brief in this court states that he did not appeal from the determination of the executive committee. Accepting that as a fact, he could not have been injured by the action of the general meeting.
He complains, however, that executive committeemen who *Page 320 
had already voted on his case at their own meeting, were permitted to vote at the general meeting on the appeal. This was not improper. A judge who sits at nisi prius, may sit en banc
in review of his own rulings. Den, Pearson v. Hopkins,2 N.J. Law 181. In the absence of statute, a justice who holds the circuit court is not disqualified from participating in the supreme court on writ of error. Peck v. Freeholders of Essex,20 N.J. Law 457, reversed on other grounds, 21 N.J. Law 656;Fry v. Bennett, 28 N.Y. 324. Complainant also says that some of the seven members who made the original charges against him, voted at the general meeting. I find no evidence of this fact but probably it is true. When the entire membership of a society constitutes the judicial body, the usual disqualifications for prejudice do not apply. Both accused and accusers, friends and foes, are eligible to vote. But even if this were not the correct rule, there is another answer to the objection. The vote to sustain the decision of the executive committee was thirty-eight to ten. Assume that all seven members who joined in the charge against complainant, voted to sustain. If they had not voted the result would have been the same. It does not appear that complainant was harmed by their participation in the appeal.Martyn v. Curtis, 68 Vt. 397; 35 Atl. Rep. 333.
The next step was taken under that part of the constitution relating to discipline. It provides that the guild, acting through a trial board, may expel any member guilty of "disobeying or neglecting to comply with any lawful decision or order of the N.E.B., the executive committee, or the general membership, within the time limit specified in the decision or order." "The trial board shall consist of five members in good standing, two of whom shall belong to the same unit as the accused, if he is a member of a unit."
Acting pursuant to the constitution and by direction of the executive committee, the secretary charged complainant with disobedience to a lawful order of the executive committee directing him to resign. Complainant answered denying that the order was lawful. "We assert emphatically that the *Page 321 
premise upon which the order was based was wholly false, vicious and the result of a malicious campaign against us." At the general meeting April 5th, 1936, the guild proceeded to select the trial board, first three members at large and then two from the Ledger unit. Eight members at large were nominated, of whom two declined, and two were absent from the meeting. The chair ruled that persons not present were ineligible because there had to be assurance that those elected would serve. On appeal to the meeting, his ruling was sustained. Three of the remaining nominees were then chosen — Lewin, Grossman and Dodge. Next, four members of the Ledger unit were nominated. Complainant objected to one Fleigman on the ground that Fleigman would be one of his principal witnesses at the trial. The chair overruled the objection. Complainant objected to another on the ground that he was one of the signers of the original petition against him. This objection was sustained. By secret ballot, Spaar and Fleigman were elected to the trial board.
Complainant argues that the constitution of the guild does not limit eligible jurymen to those present at the meeting when the trial board is selected. This is true, but their exclusion was within the discretion of the body choosing the jury. It does not appear that the ruling sprang from bias against complainant or was prejudicial to him. "He was entitled to a trial by a fair and impartial jury. He was entitled in the selection of the jury to exercise the right of challenge which gives to a defendant the opportunity of saying that he shall not be tried by some particular jurors. The right of challenge, however, is the right of exclusion, not a right of selection." State v. Langhans,95 N.J. Law 213. For example, a defendant cannot complain because all women are excluded from the panel. State v. James,96 N.J. Law 132.
Complainant, at the meeting when the trial board was chosen, did not object to any of the five who were selected. He now objects, however, to three of them, Lewin, Grossman and Dodge, on the ground that they had participated in his appeal at the general meeting on March 1st. The objection *Page 322 
comes too late, but if it were timely, it would be overruled for the reasons stated above. A judge who participates in one phase of a case is not disqualified in the absence of statute from sitting in another phase, or in a related case.
The trial board adopted the view that the decision of the executive committee was not conclusive, and sat for many nights hearing evidence on the question whether complainant's interests did, indeed, lie with the owner. Eventually, they concluded their hearings and unanimously resolved that question in the affirmative and found that complainant was guilty as charged and gave judgment expelling him from the guild. Complainant attended the hearings and cross-examined the witnesses at length, though he presented no witnesses himself and did not offer to testify. The objections to the action of the trial committee are these:
Complainant says that the only issue before the trial body was one of law, namely, whether section 25 is valid, or whether it is unreasonable and void; that in the former case the order of the executive committee was lawful and that in the latter case it was unlawful. The trial committee took the position, as already indicated, that the order of the executive committee was lawful if, as a fact, complainant's interest lay with the employer and was unlawful, if the contrary was the fact. This seems to have been also the view of complainant at the time of the trial, as appears from his answer, and it is a view which is sustained by a reasonable construction of the constitution as a whole.
At two of the sessions of the trial board, one of the five members was absent and the question arose whether the four members present should proceed or adjourn. Complainant was asked if he would agree that the four should proceed with the hearing and each time he answered that he agreed under protest. Whether under protest or not, he agreed, and cannot now press the objection that the committee sat with one member absent. Likewise, when the absentee participated in subsequent meetings, he did not object.
The hearings began in April. Toward the end of June, Fleigman was discharged from his position with the Ledger *Page 323 
and ceased to be a member of the Ledger unit and instead became a member at large of the Newark guild. In September, another one of the trial board from the Ledger unit resigned from the staff of the Ledger. So when the board finally rendered judgment in November, it was composed of five members at large and none of the Ledger unit. I think the constitution of the guild was observed when two members of the Ledger unit were chosen to sit on the trial board and that the subsequent change in their status, did not cause a mistrial or require a re-election of the trial board.
In August, the case against complainant was completed and complainant moved to dismiss the charges for insufficient evidence. The matter was argued and decision reserved and August 25th fixed as the date when the board would meet again. On that evening, only three members attended. The chairman informed complainant that, by telephone, he had obtained the views of the two absentees and that the motion to dismiss was denied. Later, the full board met and formally ratified the denial of the motion. Complainant was not prejudiced by the action of the chairman in communicating with the absentees over the telephone.
The constitution of the guild gave complainant the right of appeal from the trial board to the general meeting of the guild. That right he exercised. The appeal was argued and the trial board upheld by a vote of twenty-two to five. Complainant objects to this decision of the guild on the ground that two of the original petitioners, five of the members of the executive committee who had acted on the case the previous winter, and one member of the trial board, participated on the appeal. For reasons already stated, these objections cannot prevail.
Complainant, after a fair trial, was expelled from the defendant guild in accordance with the constitution which is the contract between the parties. This court may not interfere. The bill will be dismissed, with costs. *Page 324